UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

Janice L. Kirk,                                                                  No. 7-13-13269

    Debtor.

## MEMORANDUM OPINION

This matter is before the Court on the Debtor's Motion to Reopen Case ("Motion") so she can reaffirm a debt. The Court held two preliminary hearings on the Motion and reviewed relevant statutory and case law. The Court concludes that the Motion must be denied because the Court lacks authority to grant the requested relief.

    I.    INTRODUCTION

Debtor, by counsel, filed this case on October 4, 2013. She listed a 2009 Ford F-350 (the "Truck") in her bankruptcy schedules and also filed a Statement of Intention stating that she intended to retain the Truck and reaffirm her purchase-money debt to Ford Motor Credit Corporation ("FMCC"). On January 27, 2014, the Court entered a Discharge of Debtor (the "Discharge Order"), and closed the case. Before discharge the Debtor reaffirmed a debt to a credit union, but she did not execute a reaffirmation agreement for the FMCC's debt.

The Debtor filed the Motion on February 21, 2014, asking that the bankruptcy case be reopened "in order to file the reaffirmation agreement with Ford Motor credit . . . ." The Debtor alleged that unless a reaffirmation agreement is filed, FMCC would repossess the Truck.

At the first preliminary hearing on the Motion, counsel for the Debtor and FMCC told the Court they only wished to have the case reopened so they could file a proposed reaffirmation agreement. After the hearing, however, the Court learned that the parties also wished to have the

Discharge Order set aside. Since the latter point had not been discussed at the first hearing and seemed inconsistent with a need to file an otherwise compliant reaffirmation agreement,[1] the Court held a second hearing on the matter and took it under advisement.

II.  REAFFIRMATION AGREEMENTS MUST BE MADE (AND IF NECESSARY APPROVED) BEFORE THE GRANTING OF THE DISCHARGE

As an initial matter, the Court must decide whether the Debtor has the option of entering into a post-discharge reaffirmation agreement with FMCC. If so, the Court need not determine whether the case could be reopened and the Discharge Order set aside.

A.  Section 524 Is Unclear Whether Post-Discharge Reaffirmation Agreements Are Permitted. Section 524(c)(1)[2] provides that, for a reaffirmation agreement to be effective, "such agreement [must be] made[3] before the granting of the discharge." That is clear enough. The third sentence of § 524(d), on the other hand, states:

> If a discharge has been granted and if the debtor desires to make [a reaffirmation agreement] and was not represented by an attorney during the course of negotiating such agreement, then the court shall hold a hearing . . . .

This language, in apparent conflict with § 524(c)(1), implies that reaffirmation agreements can be signed after discharge.[4]

Despite the third sentence of § 524(d), case law is nearly universal that post-discharge reaffirmation agreements are barred. *See, e.g., In re Engles*, 384 B.R. 593, 596 (Bankr. N.D.

---

[1] Reaffirmation agreements do not have to be filed before discharge. *See, e.g., In re Bellano,* 456 B.R. 220 (Bankr. E.D. Pa. 2011, 223-24 (collecting cases); *In re Merritt,* 366 B.R. 637, 639-40 (Bankr. W.D. Tex. 2007). Therefore, Debtor must seek to set aside the Discharge Order because she did not sign the reaffirmation agreement before discharge (as required by § 524(c)(1)), and/or because the Court did not hold the "undue hardship" hearing provided for under § 524(m) before discharge.

[2] All statutory references are to 11 U.S.C. unless otherwise noted.

[3] "Made" means signed by the parties. *Schott v. WyHy Fed. Credit Union (In re Schott),* 282 B.R. 1, 7 (10th Cir. BAP 2002).

[4] The sentence can be read to allow post-discharge reaffirmation agreements only when debtors are pro se. It can also be read, however, to imply that all debtors may enter into post-discharge reaffirmation agreements, with court hearings required only for pro se debtors.

Okla. 2008); *In re Herrera,* 380 B.R. 446, 450 (Bankr. W.D. Tex. 2007); *In re Suber*, 2007 WL 2325229, at *3 (Bankr. D.N.J. 2007) (citing cases).

Two cases mention § 524(d)'s third sentence when evaluating whether post-discharge reaffirmation agreements are permitted. In *In re Donald C. Smith*, 467 B.R. 122 (Bankr. W.D. Mich. 2012), the court mentioned in a footnote:

> To the extent that language within section 524(d) might be read as an exception to the requirement in section 524(c)(1) that a reaffirmation be 'made' (or certainly negotiated) before discharge, that possible exception is inapplicable in this case because the Debtors are currently represented by counsel. The court concedes that the meaning of section 524(d) is puzzling, but the text of the statute precludes its application to the Debtors under the circumstances presented.

*Id.* at 125, n. 1. In *In re Roberts*, 154 B.R. 967 (Bankr. D. Neb. 1993), the court stated:

> Reaffirmation hearings are not required as a condition to the enforceability of a reaffirmation agreement unless either (1) the debtor is not represented by counsel; *See* § 524(c)(6), or (2) the debtor enters the reaffirmation agreement after a discharge order is entered; *See* § 524(d).

154 B.R. at 969.

B. <u>The History of § 524 Sheds Light on § 524(d)'s Meaning</u>. Reviewing the history of §§ 524(c) and (d) makes the meaning of the third sentence of (d) sufficiently clear. When Congress enacted the Bankruptcy Code in 1978, § 524(c) and (d) provided:

| § 524(c) | § 524(d) |
|---|---|
| (c) an agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable nonbankruptcy law, whether or not discharge of such debt is waived, only if—<br>  (1) such agreement was made before the granting of the discharge under section 727, 1141, or 1328 of this title;<br>  (2) the debtor has not rescinded such agreement within 30 days after such agreement becomes enforceable;<br>  (3) the provisions of subsection (d) of this section have been complied with; and | (d) In a case concerning an individual, when the court has determined whether to grant or not to grant a discharge under section 727, 1141, or 1328 of this title, the court shall hold a hearing at which the debtor shall appear in person. At such hearing, the court shall inform the debtor that a discharge has been granted or the reason why a discharge has not been granted. If a discharge has been granted and if the debtor desires to make an agreement of the kind specified in subsection (c) of this section, then at such hearing the court shall—<br>  (1) inform the debtor—<br>    (A) that such an agreement is not required under this title, under nonbankruptcy law, or under any agreement not made in accordance with the |

| | |
|---|---|
| (4) in a case concerning an individual, to the extent that such debt is a consumer debt that is not secured by real property of the debtor, the court approves such agreement as— <br>  (A) (i) not imposing an undue hardship on the debtor or a dependent of the debtor; and <br>    (ii) in the best interest of the debtor; or <br>  (B) (i) entered into in good faith; and <br>    (ii) in settlement of litigation under section 523 of this title, or providing for redemption under section 722 of this title. | provisions of subsection (c) of this section; and <br>  (B) of the legal effect and consequences of— <br>    (i) an agreement of the kind specified in subsection (c) of this section; and <br>    (ii) a default under such an agreement; <br>  (2) determine whether the agreement that the debtor desires to make complies with the requirements of subsection (c)(4) of this subsection, if the consideration for such agreement is based in whole or in part on a consumer debt that is not secured by real property of the debtor. |

11 U.S.C. § 524(d) (1978). These provisions required that the court hold "discharge hearings" in every case, before entering discharge orders; that debtors attend those hearings; that debtors notify the court at or before the hearings if they wish to reaffirm debts; and if such notification is given, the court give debtors the required information about reaffirmation agreements and determine if the proposed agreements imposed an undue hardship. The language "If a discharge has been granted and if the debtor desires to make an agreement of the kind specified in subsection (c) of this section," although not well drafted,[5] is intelligible in context in the original § 524.[6]

After the 1984 amendments to § 524 (see Exhibit A) were enacted, discharge hearings were still required in every case, and courts were still obligated to inform debtors about reaffirmation agreements, but courts only had to approve the agreements when debtors were *pro*

---

[5] Better would have been: "If the court has determined to grant a discharge," rather than "If a discharge has been granted."

[6] There were good policy reasons for the requirement that reaffirmation agreements be made and approved by the court before discharge. These include making sure creditors don't evade the discharge injunction by seeking to reaffirm discharged debts, *see, e.g., In re Lopez,* 345 F.3d 701, 710 (9th Cir. 2003) ("Congress adopted §§ 524(c) and (d) to address the problem . . . of post-discharge attempts to enforce pre-bankruptcy obligations in non-bankruptcy forums using non-bankruptcy law")*,* and making sure the debtor receives adequate information about reaffirmation agreements while they may still be rescinded. *See, e.g., In re Davis,* 106 B.R. 701, 703 (Bankr. S.D. Ala. 1989) ("Congress sought to reduce its perceived disparity in bargaining positions between debtors and creditors. The court's designated role was to protect unsophisticated debtors from overreaching sophisticated creditors who might impair the debtor's ability to achieve a fresh start")*.*

-4-

*se*. For the first time, debtor's counsel was required to opine on the undue hardship issue and ensure debtors were "fully informed" about reaffirmation agreements.

The 1986 amendments (Exhibit B) eliminated mandatory discharge hearings, a significant change. Hearings were still required for all reaffirmation agreements, but the court needed only to approve agreements of *pro se* debtors. With the 1986 changes the meaning of § 524(d) became less clear; the third sentence of § 524(d) no longer seemed related to the first two. Before, all references to a "hearing" were to the same hearing. After, it seemed two different hearings could be held, a "discharge hearing" and a "reaffirmation hearing." The latter hearing, it now seemed plausible, could relate to a post-discharge reaffirmation agreement. What was once a somewhat awkward but understandable subsection had become confusing and contradictory.

The 1994 amendments (Exhibit C) required court hearings on reaffirmation agreements only for *pro se* debtors. This eliminated the debtors' obligation to attend reaffirmation hearings if they were represented by counsel, a practice widely viewed as unproductive because courts could not set aside the reaffirmation agreements of such debtors, and often the hearings were scheduled after it was too late for the debtors to rescind. *See, e.g. In re Sweet,* 954 F.2d 610, 612 (10th Cir. 1992); *In re Davis,* 106 B.R. at 710.

Finally, in 2005 BAPCPA added about 3,000 words to § 524, most of them in a new subsection (k) setting out language a reaffirmation agreement must contain. No changes were made to § 524(d), and the only change to § 524(c) was to refer to the new subsection (k). Section 524(m) was also added, requiring court hearings on all reaffirmation agreements (even those involving real property, and even if the debtor had counsel) when the undue hardship

presumption arise. Reaffirmation agreements with credit unions are carved out of § 524(m)'s undue hardship presumption.

C. <u>Discussion</u>. The reaffirmation provisions of § 524 ballooned from 409 words in 1978 to 3,460 words today,[7] in the process becoming much more confusing and opaque. Subsections (c) and (d) became longer and less clear on the critical matter of post-discharge reaffirmation agreements. Today, the third sentence of § 524(d), read in isolation, could easily be understood to imply that post-discharge reaffirmation agreements are allowed.

Nevertheless, there is no evidence Congress intended to change the original rule barring post-discharge reaffirmation agreements. The evidence all points to poor drafting rather than a change in Congressional intent. The Court therefore concludes that, despite the current structure of § 524(d), all reaffirmation agreements must be signed, and all required or discretionary reaffirmation hearings held, before entry of the discharge.

III. <u>THE COURT HAS THE AUTHORITY TO SET ASIDE THE DISCHARGE ORDER IF THE PROPER SHOWING IS MADE</u>

Since the Discharge Order was entered before Debtor signed a reaffirmation agreement with FMCC, the question arises whether the Court can revoke the discharge or set aside the discharge order to assist Debtor in her effort to reaffirm FMCC's debt.

A. <u>The Debtor Cannot Use § 727(d) to Set Aside the Discharge Order</u>. Section 727(d) provides:

> On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if--
>   (1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge;

---

[7] In 1984, the reaffirmation provisions of § 543 totaled 543 words; in 1986, 557 words; and in 1994, 646 words. During the same time, § 524 in its entirety grew from 825 to 5,592 words.

-6-

(2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee;
   (3) the debtor committed an act specified in subsection (a)(6) of this section; or
   (4) the debtor has failed to explain satisfactorily--
      (A) a material misstatement in an audit referred to in section 586(f) of title 28; or
      (B) a failure to make available for inspection all necessary accounts, papers, documents, financial records, files, and all other papers, things, or property belonging to the debtor that are requested for an audit referred to in section 586(f) of title 28.

The debtor is not listed among the parties who may seek to revoke the discharge under § 727(d). Because of this omission, most courts have held that debtors do not have standing under § 727(d) to seek revocation of the discharge. For example, in *Donald C. Smith*, 467 B.R. at 126, n. 2, the court stated:

> [S]ection 727(d) provides that a "trustee, a creditor, or the United States trustee" may request that the court revoke a discharge. The list of persons entitled to request such relief does not include the more inclusive term "party in interest" found elsewhere in the statute, which suggests that the Debtors may not have statutory standing to seek revocation of the discharge.

*See also In re Markovich,* 207 B.R. 909 (9th Cir. BAP 1997) (debtor lack standing under § 727(d)); *In re Newton*, 490 B.R. 126, 127 (Bankr. D.C. 2013) (same); *In re Mi Jung Hong,* 2014 WL 465562, at **3-4 (Bankr. C.D. Cal. 2014) (same). *Cf. In re Magundayao,* 313 B.R. 175, 179 (Bankr. S.D.N.Y. 2004) (the court stated in dicta that since § 727(d) advances the goals of a "fresh start," it does not follow that it should be an obstacle to prevent the debtor from vacating his own discharge).

Here, there are two problems with Debtor's use of § 727(d). First, as shown above the Debtor lacks standing to file § 727(d) motions. Second, Debtor does not assert any of the grounds enumerated in § 727(d) (1)-(4). No fraud or other wrongful conduct caused the Court to enter the Discharge Order. Relief under § 727(d) therefore is unavailable to the Debtor.

B. <u>In the Proper Case, Rule 60(b) Could be Used to Vacate the Discharge Order</u>.

Bankruptcy Rules 9023 and/or 9024,[8] by their terms, give the Court authority to set aside court orders in certain limited circumstances. No federal rule, however, may "abridge, enlarge, or modify" a substantive right provided under the Bankruptcy Code. 28 U.S.C. § 2075. The interplay of Rule 60(b) and § 727(d) was discussed in *In re Magundayao,* 313 B.R. 175, 178-80 (Bankr. S.D.N.Y. 2004):

> The Rule and statute seem to conflict. In contrast to Rule 60(b), which identifies numerous grounds to "vacate" a discharge order (*e.g.,* fraud, mistake, excusable neglect), § 727(d)(1) limits the "revocation" of the discharge to situations involving fraud by the debtor. A federal bankruptcy rule cannot, however, "abridge, enlarge, or modify" a substantive right provided under the Bankruptcy Code, 28 U.S.C. § 2075, and a debtor who received a discharge could well argue that expanding the grounds to vacate a discharge abridged that right.

313 B.R. at 178-80. The majority view, adopted by *Magundayao*, is that Rule 60(b) can only be used to vacate discharge orders entered in error; all other motions to set aside discharge orders must be brought under § 727(d). *Cisneros v. United States (In re Cisneros)*, 994 F.2d 1462 (9th Cir. 1993); *United States v. Trembath (In re Trembath),* 205 B.R. 909, 914 (Bankr. N.D. Ill 1997); *Nissan Motor Acceptance Corp. v. Daniels (In re Daniels),* 163 B.R. 893, 897 (Bankr. S.D. Ga. 1994).[9]

The Tenth Circuit takes a broader view. In *Midkiff v. Stewart (In re Midkiff),* 342 F.3d 1194 (10th Cir. 2003), the Court of Appeals upheld a bankruptcy court decision to set aside a

---

[8] Rule 9023 states that, with limited exceptions, Fed.R.Civ.P. 59 applies in bankruptcy cases. Rule 9024 has analogous provisions for Fed.R.Civ.P. 60. For ease of reference, the Court will refer to Bankruptcy Rules 9023 and 9024, and Fed.R.Civ.P. 59 and 60, as "Rule 60(b)."

[9] The analysis about whether courts may use their equitable powers under § 105(a) to set aside discharge order is similar: such powers may not be used to disregard unambiguous statutory language. *See In re Williams,* 2012 WL 843210, at *2 (Bankr. D.C. 2012); *In re Bellano,* 456 B.R. 220, 223 (Bankr. E.D. Pa. 2011); *In re Engles,* 384 B.R. 593, 598 (Bankr. N.D. Okla. 2008). Thus § 105(a), like Rule 60(b), may not be used in lieu of § 727(d) or to contravene § 524(c)(1). *See generally Law v. Siegel,* __ S. Ct. __, 2014 WL 813702 (2014) (court may not use § 105(a) powers to surcharge debtor's exempt property).

discharge order in a Chapter 13 case under Rule 60(b). The court cited and agreed with *Cisneros*, 342 F.3d at 1198, but went further, distinguishing between revoking the discharge (§ 727(d)) and vacating it temporarily for a limited purpose (in *Midkiff*, to allow the Chapter 13 trustee to collect and distribute an income tax refund).

> Moreover, as the Trustee argues on appeal, the statute specifies that "the court may *revoke* such discharge only" under certain conditions, 11 U.S.C. § 1328(e) (emphasis added), whereas the court here did not "revoke" the discharge at all. Rather, it "ordered that the Court's Discharge Of Debt After Completion of Chapter 13 Plan, dated April 24, 2001 is *vacated* to the extent, and for the sole purpose, of allowing the Trustee to collect and disburse the tax refund in accordance with the Debtors' Chapter 13 plan. . . .
>
> The Order was not titled a "revocation," and the Bankruptcy Court specifically indicated that the purpose of the order was limited and specific. If the Bankruptcy Court had wanted to "revoke" the discharge, it presumably knew how to use that word, which appears prominently in the Bankruptcy Code. Indeed, revocation involves far more than temporarily setting aside a discharge. . . . . By contrast, a Rule 60(b) motion "does not affect the finality of a judgment or suspend its operation." Fed.R.Civ.P. 60(b). Thus, when a court grants relief under Rule 60(b), the discharge is not "revoked" but is simply altered to provide limited relief as appropriate under the circumstances.

342 F.3d at 1198-99.

Thus, in the Tenth Circuit there is no conflict between Rule 60(b) and §727(d) (or § 1328(e), in Chapter 13 cases) if the relief sought is not the complete revocation of the discharge, but instead setting the discharge order aside temporarily to achieve some legitimate remedial purpose.

Based on *Midkiff* the Court holds that Rule 60(b) could be used, in the appropriate case, to set aside a discharge order without running afoul of §§ 727(b), 1328(e), or other provisions of the Bankruptcy Code.

-9-

## IV. THE COURT CANNOT SET ASIDE DISCHARGE ORDER RETROACTIVELY

The harder question is whether the Court may set aside the Discharge Order *retroactively*. The deadline in this case for signing reaffirmation agreements and holding reaffirmation hearings was January 14, 2014, when the Discharge Order was entered.[10] Unless this deadline is somehow eliminated, it is too late for Debtor to reaffirm her debt to FMCC. Simply setting the Discharge Order aside would not be enough; the Court would have to rule that the Discharge Order is vacated *ab initio*.

Most cases addressing the issue have held that courts do not have the power to grant such *ex post facto* relief. For example, in *In re Carrillo,* 2007 WL 2916328 (Bankr. D. Utah 2007), Judge Thurman held:

> Section 524(c)(1) is clear on its face. A debtor must enter into a reaffirmation agreement before a discharge is issued. The Court would undermine this statutory requirement and obfuscate its importance if it granted the relief requested. The debtor does not point to any specific authority which would allow the Court to reach such a result and neither does the Court believe that such authority exists. The Debtor in this case failed to enter into a reaffirmation agreement with Citizen's before the Court entered a chapter 7 discharge. She did not timely request a delay of the discharge under Bankruptcy Rule 4004(c)(2) and she waited more than a month after the order of discharge to file the present Motion to Vacate. [footnote omitted] The Court determines that it lacks authority to vacate the discharge.

2007 WL 2916328, at *1. Similarly, in *In re Williams,* 2012 WL 843210 (Bankr. D.C. 2012), Judge Teel held:

> Because the rule of § 524(c)(1) is a substantive statutory requirement, and not a rule of procedure, vacating the discharge at the debtor's request would amount to a waiver of the protection of § 524(c)(1) which that provision plainly prohibits. Moreover, allowing Rule 59 or Rule 60 to be utilized to vacate a discharge order would be in conflict with the requirement, clearly implicit in Rule 4004(c)(2), that a deferral of the discharge be sought *prior* to the entry of the discharge.

---

[10] The Debtor did not seek to extend it, per Bankruptcy Rule 4004(c)(2).

-10-

2012 WL 843210, at *3. *See also In re Zaochney,* 2012 WL 506891, *2 (Bankr. D. Alaska 2012) (discharge and closing dates cannot be manipulated to accommodate a late reaffirmation agreement); *In re Rigal,* 254 B.R. 145, 148 (Bankr. S.D. Tex. 2000) (requirement that agreement be made before discharge would be meaningless if court could simply vacate the discharge order and then re-enter it after late reaffirmation agreement is filed); *In re Nichols,* 2010 WL 4922538, at *3 (Bankr. N.D. Iowa 2010) (nothing in the Bankruptcy Code gives the court authority to vacate the discharge to allow the parties to avoid the statutory mandates of § 524(c)(1)); *In re Conner,* 2013 WL 5781682, at *1 (Bankr. S.D. Ga. 2013) (once discharge has been granted, court lacked authority to grant debtors relief); *In re Stewart,* 355 B.R. 636 (Bankr. N.D. Ohio 2006) (court has no jurisdiction to approve a reaffirmation agreement once discharge has been entered); *In re Wilhelm,* 369 B.R. 882, 883–84 (Bankr. M.D.N.C. 2007) (same); *In re Engles*, 384 B.R. at 596 (same).

Bankruptcy Rule 9006(b),[11] which allows the Court to extend retroactively certain deadlines set by rule or court order, does not apply to statutory deadlines, and therefore cannot assist the Debtor. *See, e.g., In re Taynton Freight System Inc.*, 55 B.R. 668, 670-71 (Bankr. E.D. Pa. 1985) (court cannot retroactively extend the 60-day deadline set forth in § 365(d)(4) to assume or reject leases of non-residential real property); *In re By-Rite Distributing, Inc.,* 47 B.R. 660 (Bankr. D. Utah 1985), reversed on other grounds, 55 B.R. 740 (D. Utah 1985) (same); *In re Southwest Aircraft Services, Inc.,* 53 B.R. 805 (Bankr. C.D. Cal. 1985), affirmed, 66 B.R. 121 (9th Cir. BAP 1986); reversed on other grounds, 831 F.2d 848 (9th Cir. 1987) (same).

---

[11] 9006(b) provides in part: (b) Enlargement.
(1) *In General.* Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion . . . . on *motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.* (emphasis added).

-11-

Setting aside court orders retroactively is "a kind of judicial time travel that cannot be reconciled with the law." *Nicholson v. Nagel (In re Nagel),* 245 B.R. 657, 662 (D. Ariz. 1999) (reversing the bankruptcy court's attempt to set aside a dismissal order retroactively). *See also In re Dorff*, 480 B.R. 919 (Bankr. E.D. Wis. 2012) (citing and following *Nagel*); *In re Singleton*, 358 B.R. 253, 259 (D.S.C. 2006) (citing three cases for the proposition that even if case dismissal order is set aside, the automatic stay cannot be reinstated retroactively to the date of dismissal); *In re Streett,* 2012 WL 1413100 (Bankr. D.N.M. 2012) (same).[12]

The Court holds that is has no authority to set aside the Discharge Order retroactively so Debtor can complete the reaffirmation process with FMCC.

V. THE COURT LIKELY WOULD NOT HAVE GRANTED RELIEF IN ANY EVENT

Even if the Court believed it had authority to vacate the Discharge Order retroactively, it appears such relief would not be appropriate in this case because the Court likely would disapprove the agreement. The debtor's schedules show the presumption of undue hardship would arise under § 523(m).[13] The Court therefore would either have to disapprove the agreement or satisfy itself that the presumption had been rebutted. S*ee* § 524(m)(1). It does not appear likely such a rebuttal could be presented in this case. A vehicle payment equal to 41% of Debtor's monthly income, together with projected negative monthly cash flow of $976 (73% of income) create a very strong presumption of undue hardship. Further, the schedules show there is no equity in the Truck.

---

[12] There may be a "due process" exception to this general rule, i.e. that courts can grant retroactive relief when movant's due process rights had been violated. *See, e.g., In re Lomagno,* 320 B.R. 473 (1st Cir. BAP 2005) (collecting cases). There are no due process implications here.

[13] Debtor's schedules I and J show income of $1,336 and expenses (including the Truck payment of $550) of $2,312.

VI.     CONCLUSION

Reaffirmation agreements cannot be signed after the discharge is granted, nor can the Court hold the required § 524(m) "undue hardship" hearing. Thus, to afford Debtor relief she seeks, the Discharge Order would have to be set aside *ab initio*. Under *Midkiff,* the Court may, in appropriate circumstances vacate the Discharge Order for limited purposes. It has no ability to do so retroactively, however, unless (unlike here) serious due process rights are involved. In cases such as this one, the hands of time cannot be turned back. The Motion therefore must be denied. The Court will enter an order consistent with this Opinion.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered March 25, 2014.

Copies to:

Allan Wainwright
800 Lomas Blvd, NW, #100
Albuquerque, NM 87102

Kenneth G. Egan
1111 E. Lohman
Las Cruces, NM 88001

Exhibit A    1984 Amendments

| § 524(c) | § 524(d) |
|---|---|
| (c)  an agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable nonbankruptcy law, whether or not discharge of such debt is waived, only if—<br>  (1) such agreement was made before the granting of the discharge under section 727, 1141, or 1328 of this title;<br>  *(2) such agreement contains a clear and conspicuous statement which advises the debtor that the agreement may be rescinded at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the holder of such claim;*<br>  *(3) such agreement has been filed with the court and, if applicable, accompanied by a declaration or an affidavit of the attorney that represented the debtor during the court of negotiating an agreement under this subsection, which states that such agreement—*<br>    *(A) represents a fully informed and voluntary agreement by the debtor; and*<br>    *(B) does not impose an undue hardship on the debtor or a dependent of the debtor;*<br>  *(4) the debtor has not rescinded such agreement at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of recession to the holder of such claim;*<br>  ~~(2) the debtor has not rescinded such agreement within 30 days after such agreement becomes enforceable;~~<br>  (~~3~~*5*) the provisions of subsection (d) of this section have been complied with; and<br>  (~~4~~*6*) (A) in a case concerning an individual *who was not represented by an attorney during the course of negotiating an agreement under this subsection,*~~, to the extent that such debt is a consumer debt that is not secured by real property of the debtor,~~ the court approves such agreement as—<br>    (i) not imposing an undue hardship on the debtor or a dependent of the debtor; and<br>    (ii) in the best interest of the debtor.; *or*<br>  (B) *Subparagraph (A) shall not apply to the extent that such debt is a consumer debt secured by real property* ~~(i) entered into in good faith; and~~<br>  ~~(ii) in settlement of litigation under section 523 of this title, or providing for redemption under section 722 of this title~~. | (d)  In a case concerning an individual, when the court has determined whether to grant or not to grant a discharge under section 727, 1141, or 1328 of this title, the court shall hold a hearing at which the debtor shall appear in person. At such hearing, the court shall inform the debtor that a discharge has been granted or the reason why a discharge has not been granted.  If a discharge has been granted and if the debtor desires to make an agreement of the kind specified in subsection (c) of this section, then at such hearing the court shall—<br>  (1) inform the debtor—<br>    (A) that such an agreement is not required under this title, under nonbankruptcy law, or under any agreement not made in accordance with the provisions of subsection (c) of this section; and<br>    (B) of the legal effect and consequences of—<br>      (i) an agreement of the kind specified in subsection (c) of this section; and<br>      (ii) a default under such an agreement;<br>  (2) determine whether the agreement that the debtor desires to make complies with the requirements of subsection (c)(~~4~~*6*) of this subsection, if the consideration for such agreement is based in whole or in part on a consumer debt that is not secured by real property of the debtor. |

11 U.S.C. § 524 (1984) (changes from prior version shown in italics or strikethrough).

Exhibit B--1986 Amendments.

| § 524(c) | § 524(d) |
|---|---|
| (c) an agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable nonbankruptcy law, whether or not discharge of such debt is waived, only if—<br>  (1) such agreement was made before the granting of the discharge under section 727, 1141, or 1328 of this title;<br>  (2) such agreement contains a clear and conspicuous statement which advises the debtor that the agreement may be rescinded at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the holder of such claim;<br>  (3) such agreement has been filed with the court and, if applicable, accompanied by a declaration or an affidavit of the attorney that represented the debtor during the court of negotiating an agreement under this subsection, which states that such agreement—<br>    (A) represents a fully informed and voluntary agreement by the debtor; and<br>    (B) does not impose an undue hardship on the debtor or a dependent of the debtor;<br>  (4) the debtor has not rescinded such agreement at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of recession to the holder of such claim;<br>  (5) the provisions of subsection (d) of this section have been complied with; and<br>  (6) (A) in a case concerning an individual who was not represented by an attorney during the course of negotiating an agreement under this subsection, the court approves such agreement as—<br>      (i) not imposing an undue hardship on the debtor or a dependent of the debtor; and<br>      (ii) in the best interest of the debtor.; or<br>   (B) Subparagraph (A) shall not apply to the extent that such debt is a consumer debt secured by real property. | (d) In a case concerning an individual, when the court has determined whether to grant or not to grant a discharge under section 727, 1141, or 1328 of this title, the court *may* hold a hearing at which the debtor shall appear in person. At *any* such hearing, the court shall inform the debtor that a discharge has been granted or the reason why a discharge has not been granted. If a discharge has been granted and if the debtor desires to make an agreement of the kind specified in subsection (c) of this section, then *the court shall hold a hearing at which the debtor shall appear in person and* at such hearing the court shall—<br>  (1) inform the debtor—<br>    (A) that such an agreement is not required under this title, under nonbankruptcy law, or under any agreement not made in accordance with the provisions of subsection (c) of this section; and<br>    (B) of the legal effect and consequences of—<br>      (i) an agreement of the kind specified in subsection (c) of this section; and<br>      (ii) a default under such an agreement;<br>  (2) determine whether the agreement that the debtor desires to make complies with the requirements of subsection (c)(6) of this subsection, if the consideration for such agreement is based in whole or in part on a consumer debt that is not secured by real property of the debtor. |

11 U.S.C. §524(d) (1986) (changes from prior version shown in italics).

Exhibit C--1994 amendments.

| § 524(c) | § 524(d) |
|---|---|
| (c) an agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable nonbankruptcy law, whether or not discharge of such debt is waived, only if—<br>  (1) such agreement was made before the granting of the discharge under section 727, 1141, or 1328 of this title;<br>  (2) *(A)* such agreement contains a clear and conspicuous statement which advises the debtor that the agreement may be rescinded at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the holder of such claim; *and*<br>    *(B) such agreement contains a clear and conspicuous statement which advises the debtor that such agreement is not required under this title, under nonbankruptcy law, or under any agreement not in accordance with the provisions of this subsection;*<br>  (3) such agreement has been filed with the court and, if applicable, accompanied by a declaration or an affidavit of the attorney that represented the debtor during the court of negotiating an agreement under this subsection, which states that ~~such agreement~~—<br>    (A) represents a fully informed and voluntary agreement by the debtor; ~~and~~<br>    (B) *such agreement* does not impose an undue hardship on the debtor or a dependent of the debtor; *and*<br>    *(C) the attorney fully advised the debtor of the legal effect and consequences of—*<br>      *(i) an agreement of the kind specified in this subsection; and*<br>      *(ii) any default under such an agreement;*<br>  (4) the debtor has not rescinded such agreement at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of recession to the holder of such claim;<br>  (5) the provisions of subsection (d) of this section have been complied with; and<br>  (6) (A) in a case concerning an individual who was not represented by an attorney during the course of negotiating an agreement under this subsection, the court approves such agreement as—<br>    (i) not imposing an undue hardship on the debtor or a dependent of the debtor; and<br>    (ii) in the best interest of the debtor.; or<br>  (B) Subparagraph (A) shall not apply to the extent that such debt is a consumer debt secured by real property | (d) In a case concerning an individual, when the court has determined whether to grant or not to grant a discharge under section 727, 1141, or 1328 of this title, the court may hold a hearing at which the debtor shall appear in person. At any such hearing, the court shall inform the debtor that a discharge has been granted or the reason why a discharge has not been granted. If a discharge has been granted and if the debtor desires to make an agreement of the kind specified in subsection (c) of this section *and was not represented by an attorney during the course of negotiating such agreement*, then the court shall hold a hearing at which the debtor shall appear in person and at such hearing the court shall—<br>  (1) inform the debtor—<br>    (A) that such an agreement is not required under this title, under nonbankruptcy law, or under any agreement not made in accordance with the provisions of subsection (c) of this section; and<br>    (B) of the legal effect and consequences of—<br>      (i) an agreement of the kind specified in subsection (c) of this section; and<br>      (ii) a default under such an agreement;<br>  (2) determine whether the agreement that the debtor desires to make complies with the requirements of subsection (c)(6) of this subsection, if the consideration for such agreement is based in whole or in part on a consumer debt that is not secured by real property of the debtor. |

11 U.S.C. §524(d) (1994) (changes from the prior version shown in italics).

-16-